For the reasons given in that matter, the judgment appealed from is affirmed.

93 So.2d 190

Joseph MOTICHEK et al.

v.

John J. PERRILOUX.

No. 42696.

Jan. 21, 1957.

Rehearing Denied Feb. 25, 1957.

Fred J. Heintz, Covington, Benj. W. Miller, Bogalusa, for defendant-appellant.

Philip E. Pfeffer, Covington, for plaintiffs-appellants.

McCALEB, Justice.

Plaintiffs, the heirs of Jacob Motichek, claiming that defendant trespassed on land owned by them in St. Tammany Parish and removed the timber from 1½ acres thereof, seek recovery of damages in the sum of $8,250, the alleged manufactured value of the removed timber, contending that defendant acted in moral bad faith.

Defendant filed an exception of no cause of action, which was overruled, and thereafter answered denying generally the allegations of plaintiffs' petition. A trial on the merits resulted in judgment in favor of plaintiffs for $1,880. The judge found that defendant had cut and removed the timber from the eastern 1½ acres of plaintiffs' land as alleged but that, being in good faith, defendant was liable only for the stumpage value of the timber which amounted to $1,880. Both litigants have appealed from this judgment, defendant contending that he did not trespass on plaintiffs' land and plaintiffs asserting that the judge should have held that defendant was in moral bad faith.

It appears that on July 23, 1903 one Louis Galatas and others, heirs of Rudolph Galatas, caused a survey to be made by the late J. M. Yates, formerly the Parish Surveyor of St. Tammany Parish, of a certain parcel of land owned by them in Section 14, Township 7 South, Range 10 East, Greensburg District of Louisiana, designated as Lot 16.

This survey, which was introduced in evidence, indicated that Lot 16 contained 10 acres, more or less.

On April 2, 1906 the Galatas heirs sold to John Thomas the eastern four acres of this property described in the deed as follows:

"All that certain lot or parcel of land situated in the Parish of St. Tammany, State of Louisiana, described as being Four (4) acres of land situated in Section No. 14, Township Seven (7), South of Range Ten (10) East, of St. Hel. Mer. and bounded as follows to-wit:

"On the North by a 50 foot road, East by a 30 foot alley, South by the present vendors, and West by land of Victor Baham."

On March 10, 1908 the Galatas heirs sold to Henry and J. E. Edwards certain other property situated in the same section and described as follows:

"Six acres of land situated in the Parish of St. Tammany, State of Louisiana, in the S.W. quarter of Section 14, T.S.7,S, of R. 10 E. Greensburg District of Louisiana, being a portion of Lot 16, bounded on the North by Fifty foot road, South and West by Section lines of Section 14, and 44, East by Lot of John Thomas, or balance of Lot 16."

This property was subsequently acquired under the same description by Henry Edwards and sold by him on May 22, 1912 to Jacob Motichek, father of the present plaintiffs.

Defendant, prior to cutting and removing the timber from land which plaintiffs allege they own, engaged Mr. Lowell E. Cummings, a licensed surveyor, to survey the Motichek property situated in Section 14. Using the Yates plat as a basis, Mr. Cummings surveyed out 6 acres as belonging to plaintiffs and defendant proceeded to cut and remove timber from the remainder of Lot 16. Mr. Cummings did not make a survey of the 4 acres conveyed to John Thomas in 1906. Upon interrogation by the court, using the Yates plat as a basis and applying thereto his own findings, he ascertained the entire acreage of Lot 16 to be 10.31 acres.

It is plaintiffs' position that defendant cut and removed timber not only from the 4 acres owned by John Thomas but also from 1½ acres owned by them. To substantiate this contention they offered in evidence a survey of the Motichek property in Sections 14 and 44 made by Mr. C. M. Moore subsequent to defendant's alleged trespass. This survey, also based on the Yates plat and using John Thomas' lot as the eastern boundary, revealed that plaintiffs have title to 7½ acres in Lot 16. In other words, Mr. Moore ascertained Lot 16 to comprise 11½ acres. His survey indicates, and Mr. Moore so testified, that two rusty iron stakes mark the boundary between plaintiffs' 7½-acre tract and the 4 acres belonging to John

Thomas. He also found the remains of an old rail fence that, in his opinion, formerly separated the two tracts.

Defendant concedes that he cut and removed timber from all of Lot 16 other than from the 6 acres surveyed out by Mr. Cummings but he contends that, in conformity with the language contained in the 1912 deed from Henry Edwards to Jacob Motichek, plaintiffs acquired no more than the western 6 acres of land in Lot 16.

We think the trial judge was correct in sustaining plaintiffs' position as the deed from Henry Edwards to Jacob Motichek exhibits that it is a sale per aversionem, or between fixed boundaries, even though it specifies that six acres of land are conveyed.[1] The description in this deed sets forth that the six acres of land conveyed are "bounded on the North by Fifty foot road, South and West by Section lines of Section 14 and 44, East by Lot of John Thomas, or balance of Lot 16." This clearly evinces the intention of the vendor to convey all of the property owned by him within the given boundaries and, therefore, falls within the provisions of Article 854 of the Civil Code which declares:

"If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title."

In contending that plaintiffs' ancestor did not acquire more than six acres of land, as specified by their title, counsel for defendant argue that the boundaries contained in the description should not be controlling as to the acreage conveyed because the eastern boundary designated as "Lot of John Thomas" is followed by the disjunctive phrase "or balance of Lot 16" which was inserted in the deed to provide an alternative eastern boundary in the event the first eastern boundary, i. e., the lot of John Thomas, defined a tract in excess of six acres.

This argument is not impressive. The clause "or balance of Lot 16", as used in the last line of the description, cannot be regarded as prefacing an alternative boundary. On the contrary, it is merely explanatory of the statement that the eastern boundary of the property is the lot of John Thomas. The conjunction "or", as used in the description, is synonymous with "to wit", "in other words" or "that is to say" and is employed to clarify the preceding phrase "Lot of John Thomas". See Black's Law Dictionary, 4th Ed., page 1246 and

---

1. It is well established that the method of identifying land by acreage is the weakest method known, yielding to every other method. See W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184.

Peck v. Board of Directors, 137 La. 334, 68 So. 629.

Furthermore, there is no language contained in the deed from Henry Edwards to Jacob Motichek which would justify a conclusion that the vendor intended to retain for himself any land between the property he was selling and that of John Thomas. Conversely, we think the deed evidences a clear design on the part of the vendor to convey his entire ownership in Lot 16.

■ The next question to be ascertained is the extent of defendant's trespass. The trial judge, in finding that plaintiffs owned 7½ acres in Lot 16 and that defendant, who admittedly cut timber on all but 6 acres in Lot 16, trespassed on 1½ acres of plaintiffs' property, accepted the calculations of Mr. Moore over those of Mr. Cummings.

We are in accord with this conclusion. Mr. Moore arrived at his figure after surveying all of Lot 16 while Mr. Cummings' result was based on a survey of six acres only, the findings from which he applied to the Yates plat to determine a total acreage of 10.31 acres.

■■ Plaintiffs complain that the judge should have found that defendant acted in moral bad faith. The evidence reveals that,

prior to the cutting of the timber, defendant went to one of the plaintiffs, Joseph Motichek, to ascertain the eastern boundary of plaintiffs' land. Joseph Motichek admits that defendant called on him and states that he showed defendant the boundary line. But defendant testified that Motichek did not know the boundary line and it was for this reason that he hired Mr. Cummings to compute the eastern boundary of plaintiffs' property. It is admitted that he did not cut timber west of the boundary line calculated by Mr. Cummings. The judge gave credence to defendant's testimony and we subscribe to his finding that defendant was in neither moral nor legal bad faith[2] when he cut and removed plaintiffs' timber.

■ Plaintiffs urge for the first time on this appeal that defendant's moral bad faith is evidenced by his failure to show that he had any right to cut timber from even the Thomas tract. While it is true that defendant offered no specific proof that he had purchased the timber on the Thomas tract, it is implicit from the pleadings and testimony that he had lawful authority to cut and remove the timber from that property. Accordingly, since defendant's cutting of plaintiffs' timber was in good faith, he believing that he was authorized to remove it

2. A trespass is in moral bad faith when it is reckless and willful while it is said to be in legal bad faith when the trespasser believes himself to be the owner but should have known otherwise, either from information available to him or ascertainable facts which would have placed a reasonably prudent man on notice. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847.

and there being no valid reason for him to suppose otherwise, the trial judge properly found him liable only for its stumpage value. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 and cases there cited.

The judgment appealed from is affirmed.