170 So.2d 371

STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS

v.

Heyward (Heywood) Simpson TUCKER et al.

No. 47092.

Dec. 14, 1964.

Rehearing Denied Jan. 18, 1965.

Love, Rigby, Donovan, Kenneth Rigby, Shreveport, for applicants.

T. K. Giddens, Jr., Smitherman, Smitherman, Purcell & Lunn, Gerald LeVan, Peters, Tuck & Ward, Hugh T. Ward, Shreveport, Chester E. Martin, Baton Rouge, Asst. to Gen. Counsel, Department of Highways, State of Louisiana, for defendants, intervenors, plaintiffs in reconvention, appellees and respondents.

SANDERS, Justice.

This is an expropriation proceeding, in which rival claimants seek the funds on deposit in the registry of the court. The State of Louisiana through the Department of Highways filed the action against the heirs of Anthony W. Tucker to expropriate a strip of land, formerly a railroad right of way, through Section 22, Township 17 North, Range 15 West, Caddo Par-

ish, Louisiana. Deposited in the registry of the court was the sum of $7,209.00, representing the value of the property.

The owners of certain tracts of land abutting the former railroad right of way intervened in the proceeding, asserting ownership of various portions of the right of way and claiming a corresponding portion of the funds. Prior to July, 1956, each of the intervenors had acquired a tract of land, shown by a recorded map or described in the deed as bounded by the right of way. To sustain their ownership of the right of way, the intervenors relied upon Act No. 555 of 1956 (LSA–R.S. 9:2971–9:2973), effective August 1, 1956. This statute creates a conclusive presumption that a conveyance of property described as bounded by a railroad or other right of way also includes the seller's interest in the right of way. The Tucker heirs pleaded the unconstitutionality of the statute, asserting that when retroactively applied the statute divested vested rights and impaired the obligation of contracts in violation of Section 15, Article IV of the LSA–Constitution and Section 10, Article I and the Fourteenth Amendment of the United States Constitution.

The district court upheld the statute and awarded the expropriation funds to the in-

tervenors, the abutting property owners. The Court of Appeal affirmed. See 159 So. 2d 432. We granted certiorari to review the judgment of the Court of Appeal. 245 La. 807, 161 So.2d 279.

Presented for determination is the constitutionality of LSA–R.S. 9:2971–9:2973, as applied to conveyances before its enactment.

The essential facts are these: Anthony W. Tucker originally owned Section 22, Township 17 North, Range 15 West, in Caddo Parish. On September 1, 1853, he conveyed to the Vicksburg, Shreveport and Texas Railway Company a 150-foot-wide servitude through this section for railroad right of way purposes. Tucker, of course, retained the naked ownership. In April, 1956, the Illinois Central Railroad, successor of the Vicksburg railroad, abandoned the right of way and the servitude terminated.[1]

The intervenors acquired the abutting tracts from the heirs or assigns of Anthony W. Tucker. They now contend that their deeds conveyed to them the property in the right of way, especially under the provisions of Act No. 555 of 1956 (LSA–R.S. 9:2971–9:2973).

---

1. That the conveyance was of a servitude and that it had terminated was judicially decreed in favor of the Tucker heirs on November 23, 1960, by judgment of the First Judicial District Court in suit No. 141,560, entitled Heyward Simpson Tucker, et al. v. Illinois Central Railway Company, instituted November 3, 1959.

The statute provides:

"§ 2971. It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; provided, that where the grantor at the time of the transfer or other grant holds as owner the title to the fee of the land situated on both sides thereof and makes a transfer or other grant affecting the land situated on only one side thereof, it shall then be conclusively presumed, in the absence of any express provision therein particularly excluding the same therefrom, that the transfer or other such grant thereof shall include the grantor's interest to the center of such waterway, canal, highway, road, street, alley, railroad, or other right of way; provided further, however, that no then existing valid right of way upon, across or over said property so transferred or conveyed or so presumed to be conveyed and no warranties with respect thereto shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part or because of the failure of such grantor or transferror to therein make special reference to such right of way or to include or exclude same therefrom.

"§ 2972. This Part is remedial and is for the benefit of all persons heretofore as well as hereafter acquiring by or under such a transfer or other grant affecting such property, without express exception or reference in the description of such land, rights of way or other property therein set forth.

"§ 2973. Any person who has made a transfer or other grant affecting land so described, their heirs or assigns, whose rights may be affected hereby, shall have a period of one year from August 1, 1956, within which to preserve and protect such rights, by: (a) filing suit in each parish where such land is situated, asserting such rights, or (b) by recording a notarized declaration asserting such rights in the conveyance records of each parish where such land is situated within such one year period; and in case neither said method of preserving such rights is followed within one year from August 1, 1956, said rights shall be forever barred."

Since the Tucker heirs neither filed a suit nor recorded a notarial declaration within one year as required by the statute, their ownership of the property is lost if the statute is valid. A conclusive presumption exists that the deeds to the land abutting the right of way included the seller's interest in the right of way.

█ Important here, we think, is the circumstance that each of the deeds described the land conveyed by specific boundaries, one of which was the railroad right of way. In Louisiana a sale of land by fixed boundaries is known as a sale *per aversionem*.[2] Deeply imbedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries.[3] Prior to Act No. 555 of 1956, this ancient principle applied with equal force when the sale designated a railroad right of way as a boundary. Such a sale included no property underlying the right of way.[4] The rule had a sound basis: It effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract.

The assailed statute expressly applies to conveyances of land made before its enactment. It grants to any person whose rights may be affected one year within which to assert them by filing a suit or a notarial declaration. Absent such action, a conclusive presumption arises that the property underlying the right of way has passed to the purchaser, without regard to possession and despite the contractually designated boundary.

The intervenors assert that the statute is one of prescription, or repose, long recognized by this and other courts as a constitutional method of clearing questionable land titles.[5] As we view the statute, however, it is not a true statute of repose. It heals no formal or technical defects to bind the parties in accordance with their original intention. Rather, it reduces the valid, record title of the seller or his successor to a claim or right of action that is lost unless asserted within the prescribed period. The divestiture takes place although the seller or his successor is in possession. Persons previously without a record title become beneficiaries, receiving title through the effect of the law.

2. Art. 854, LSA–Civil Code; Passera v. City of New Orleans, 167 La. 199, 118 So. 887.
3. Arts. 854, 2495, LSA–Civil Code; Romero v. Rader, 160 La. 40, 106 So. 667; Prejean v. Giroir, 19 La. 422; Gormley v. Oakey, 7 La. 452; Saulet v. Trepagnier, 2 Rob. 357; 1 Louisiana Law Review 608, 615–617.

4. Lawton v. Anthony (La.App.), 92 So. 2d 747; Hanks v. Stutes (La.App.), 85 So.2d 362; Chiasson v. Duplechain (La.App.) 56 So.2d 615. See also Mendez v. Dugart, 17 La.Ann. 171.
5. See Atchafalaya Land Co. v. F. B. Williams Cyprus Co., 146 La. 1047, 84 So. 351, affirmed 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559.

■ Such an alteration disrupts established land tenure, transfers land from persons holding clear titles, and defeats the reasonable expectations of landowners who have relied upon the law in effect at the time of conveyance. As retroactively applied, the statute impairs the obligation of contracts and divests vested rights. Consequently, it violates the federal and state constitutions.[6]

In Murrison v. Fenstermacher, 166 Kan. 568, 203 P.2d 160, 7 A.L.R.2d 1360, a leading decision reviewing numerous authorities, the Court said:

"'The Legislature is without power to divest of his land, an owner holding by a fee-simple title with nobody else in possession, either directly or indirectly by legislation cutting down the ownership to a mere right of action which will be lost unless asserted within [a] prescribed period.'"

We have reviewed the authorities cited by the intervenors and find them inapplicable to this case.

■ For the reasons assigned, the judgment of the Court of Appeal is reversed; the demands of the intervenors are rejected and the defendants are decreed to be the owners of the property expropriated, entitled as such to the funds deposited in the registry of the court; and the costs of court connected with the intervention are taxed against the intervenors.

---

6. Section 10, Article I, 14th Amendment, United States Constitution; Section 15, Article IV, LSA–Constitution; Murrison v. Fenstermacher, 166 Kan. 568, 203 P.2d 160, 7 A.L.R.2d 1360; Leavenworth v. Claughton, 197 Miss. 606, 607, 19 So. 2d 815, 20 So.2d 821; Dingey v. Paxton, 60 Miss. 1038; Annotation, 7 A.L.R.2d 1366; 2 Cooley's Constitutional Limitations (8th ed.), pp. 762–764; 34 Am.Jur., Limitation of Actions, § 20, p. 29; 16A C.J.S. Constitutional Law § 615, p. 774. See also Williams v. Bailey (Okla.) 268 P.2d 868 and Kupka v. Reid, 50 Wash. 2d 465, 312 P.2d 1056.